618 P.2d 245

The STATE of Arizona, Appellee/Cross Appellant,

v.

Clyde Louis CLOVIS, Appellant/Cross Appellee.

No. 2 CA–CR 1936.

Court of Appeals of Arizona, Division 2.

July 30, 1980.

Rehearing Denied Sept. 10, 1980.

Review Denied Sept. 25, 1980.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee/cross appellant.

John D. Kaufmann, Tucson, for appellant/cross appellee.

OPINION

HOWARD, Judge.

Appellant, convicted by a jury of three counts of robbery, was sentenced to concurrent prison terms of two years on each count. A co–defendant, Clifton Bardwell, was tried in absentia with appellant and was convicted of three counts of armed robbery. Appellant contends the trial court erred in several instances. The state has filed a cross–appeal.

On July 9, 1979, appellant and Bardwell went to a 7–11 convenience market in Tucson, Arizona in appellant's van. While appellant waited in the van, Bardwell, armed with appellant's rifle, went inside, demanded money from two customers and had the store clerk give him the cash in the register. Bardwell then ran out to the van which was moving slowly with the sliding door open. He jumped in and they drove off. Approximately 30 minutes later the van was stopped by a police officer who heard a description of it over his police radio. Appellant and Bardwell were arrested.

Appellant subsequently made a taped statement which was admitted into evidence. He gave the following version of the incident:

"* * *

Q. Okay MR. CLOVIS at approximately 11:30 in the evening, on July 9, did you and CLIFTON BARDWELL rob a 7–11 STORE at 4680 E. Broadway?
A. Uhm, oh the wording on that's tricky but it's pretty much correct.
Q. Ah in what way did, I don't mean to be tricky, but in what way do you . . .
A. Well the way it sounds tricky is like, we both walked in, held guns on everybody and walked back out again.
Q. No, no I didn't mean that but ah well in your own words can you tell me what happened?
A. Yes, well we were traveling we were on our way back east and his girl friend has a kid and we ran short on money and and we were thinking of latching on with a carnival heading back east and working our way back there but we kind of needed money right away, you know, until we

could find one to latch onto and it didn't seem like many things, you know, left that we could do. So we went out and got a license plate, changed the license plate on the Van and drove around and found a place and you know, we stopped and he ran in and hit the place, says, told me to turn the Van around, you know while he was in there doing it. And I turned the Van around and when he came back out he jumped in and we drove off and a short while later two officers, or one officer I think it was pulled us over. He waited there until he got some help.
Q. What was CLIFTON or he calls himself BUCK is that correct?
A.
Q. You have to say yes.
A. Yes sir.
Q. Uh–huh what was BUCK armed armed with when he went into the store?
A. He was armed with a Winchester, Model 94, 30–30 lever action.
Q. Who's rifle is that?
A. It was given to me by my parents a couple of years ago.
* * * "

Bardwell also made a statement in which he described appellant's participation:

"Q. Okay, and, when you entered the store, ah, you stated you announced it was a robbery?
A. Yes.
Q. And, then in fact, ah, ah, you took, ah, two dollars, ah, from one subject, a wallet containing, ah, ah, a ten dollar traveller check, and, ah, some credit cards from another subject and then, ah, twentyeight (sic) dollars from the, ah, store clerk, is that correct?
A. Yes.
Q. Ah, who was your, ah, partner?
A. My partner is CLYDE CLOVIS.
Q. An, was he the, ah, driver of the truck?
A. Yes, he was, the van.
Q. Did you plan this robbery, ah, before you, ah, went into the place?
A. Um, I don't understand what you mean, before I went in there.

Q. I mean, did you talk, did you . . .
A. I walked, I mean, I walked in there with a rifle, so, naturally, it was before I walked in there.
Q. Mmm Hmm. But, I mean, did you talk with, ah, ah, MR. CLOVIS, ahm, in regards to pulling the robbery, to get some money?
A. Yes.
. . ."

At trial appellant testified on his own behalf. He stated that he and Bardwell planned to steal food from the store and that he had no idea when they arrived there that Bardwell was going to rob anyone. He denied seeing Bardwell take the rifle with him when he entered the store. By his testimony, appellant admitted a conspiracy to commit third–degree burglary in violation of A.R.S. Sec. 13–1003 and Sec. 13–1506 which would have subjected him to a two–year presumptive sentence under A.R.S. Sec. 13–701(B)(4). Appellant attempted to reconcile his testimony in court with that of his prior confession by pointing out that the word "rob" was used by the interrogator and not him. Furthermore, although he stated in his confession that Bardwell went into the store with a weapon, he testified at trial that he first knew that Bardwell had a weapon when he saw him running out of the store.

The trial court submitted forms of verdict, as to appellant, on armed robbery and robbery.[1] It also submitted to the jury the question of the dangerous nature of the offense. The jury found appellant guilty of three counts of robbery and found that the offense was dangerous in nature. The trial court subsequently set aside the finding of dangerousness because it felt it was inconsistent with the jury finding appellant guilty of robbery instead of armed robbery.

## I

### THE FAILURE TO SEVER

▪ Appellant contends that the trial court erred in denying his motion to sever.

We do not agree. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) the court reversed the robbery conviction of a defendant who had been implicated in a crime by his co–defendant's extra judicial confession. Because the co–defendant had not taken the stand at the joint trial and thus could not be cross–examined, the court held that admission of the co–defendant's confession had deprived the defendant of his rights under the confrontation clause of the Sixth Amendment. However, the *Bruton* rule does not apply when there are interlocking confessions as there are here. See *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).

## II

### REFUSAL TO GIVE A LIMITING INSTRUCTION

▪ Appellant objected to the admission of Bardwell's confession on the ground it was hearsay as to him. The trial court overruled the objection. Appellant requested the trial court to instruct the jury that Bardwell's confession was not to be considered in determining appellant's guilt. The court refused to do so under the mistaken belief that if a joint trial was proper, Bardwell's confession was admissible against appellant. This was clearly wrong. As far as appellant was concerned, Bardwell's confession was hearsay and inadmissible. See Rules 801 and 802, Arizona Rules of Evidence. Under *Parker v. Randolph*, supra, a joint trial can be held where there are interlocking confessions *and* the trial court instructs the jury that each confession can be used only against the defendant who gave it and it is not to be considered as evidence of a co–defendant's guilt. In *Bruton v. United States*, supra, the court felt that a limiting instruction would be of no avail under the factual situation that was

---

1. We have not been called upon to decide on what basis the trial court gave a robbery form of verdict to the jury when all the evidence shows it was an armed robbery and appellant's contention was not that they had planned an unarmed robbery, but a burglary.

present there. However, in *Parker v. Randolph*, supra, the rationale was that the jury would be more likely to follow the limiting instruction and not be influenced by a co—defendant's confession if they both have confessed. Thus, under *Parker v. Randolph*, supra, there must be both interlocking confessions and a limiting instruction.

The state argues that the error was harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) because there was overwhelming evidence of appellant's guilt. It bases this contention on his confession. We do not agree. It cannot be said that the confession was "air tight". The interrogator did not attempt to refine his questions or exact from appellant, admission of the elements of the crime of robbery. To the layman, robbery, burglary and theft are sometimes considered synonymous. Contrary to the state's assertion, Bardwell's confession exceeds that of appellant since Bardwell stated that when he entered the store he announced it was a robbery and that appellant was aware of what Bardwell was doing. In view of appellant's defense, we cannot say that the error was harmless. It will therefore be necessary to reverse and remand for a new trial, but we address other issues which may occur.

### III

### THE SEARCH AND SEIZURE

Officer Yant of the Tucson Police Department, while making a routine traffic stop, heard a description over the radio of the van involved in the armed robbery of the 7–11 store. A short time later he saw a van meeting the description traveling in a direction away from the scene of the robbery. The vehicle had its dome light on and the driver turned it off when he observed Officer Yant. Yant stopped the vehicle and radioed its license number so that a license plate check could be made. He approached the driver's door and observed that the van had no windows. Unaware that anyone else was within the van, he returned with the driver to the police vehicle. He asked the driver, appellant, for his driver's license

upon which appellant produced a temporary California driver's license that showed his last name to the Culver. Officer Yant advised appellant of his rights under *"Miranda"*. At this time he heard over the radio that either the vehicle or the license plates might be stolen. He asked the driver if there was anyone else in the van. When appellant responsed in the affirmative Yant handcuffed him, had him lie face down on the ground and got out his shotgun, waiting for the other units which were coming to his aid. When the other units arrived a public address system was set up and Bardwell was asked to get out of the van. He did so and was taken into custody.

Yant then entered the van to get the vehicle registration which was on the visor. The registration had the name Clovis instead of Culver. At that time he observed a rifle butt protruding from under a mattress in the van. Yant picked up the mattress and confirmed that there was a rifle. He told two other officers what he had observed in the van and subsequently removed the rifle. Appellant and Bardwell were taken back to the convenience market for identification purposes. Appellant contends that all evidence that was seized inside the van should have been suppressed because (1) his vehicle was stopped without a well–founded suspicion and (2) he was arrested without probable cause. We do not agree. An investigative stop will be deemed reasonable where the officer demonstrates some basis from which the court can determine that he was not acting arbitrarily or merely to harass. *State v. Jarzab*, 123 Ariz. 308, 599 P.2d 761 (1979). The record demonstrates that the stop was reasonable because the van met the description of the vehicle involved in the robbery. When the police radio informed Yant that either the vehicle or the license plates were stolen, probable cause to arrest appellant was established. *State v. Vaughn*, 12 Ariz. App. 442, 471 P.2d 744 (1970).

### IV

### THE CONFESSION

Appellant contends that the trial court erred in denying the motion to sup-

press his confession because he made it solely from a sense of futility after making several requests for an attorney which were ignored. Every police officer who had contact with appellant denied that there had been any request for counsel by appellant. The trial court found beyond a reasonable doubt that the confession was knowing, intelligent and voluntarily given. The evidence supports this ruling.

## V

### THE MOTION FOR REDETERMINATION OF PROBABLE CAUSE

■ Appellant contends that the trial court erred in not granting his motion for redetermination of probable cause because of a discussion at the grand jury deliberations which was not recorded. See *State v. Superior Court*, 26 Ariz.App. 482, 549 P.2d 577 (1976) and *Wilkey v. Superior Court*, 115 Ariz. 526, 566 P.2d 327 (App.1977). Immediately after going off the record the county attorney dictated the following into the record:

> "The record should indicate that the Deputy County Attorney thought he smelled some burning paper in the grand jury room and that was the reason that a discussion occurred at the time we went off the record, which was less than 30 seconds."

It is clear that appellant was not prejudiced by the off–record discussion and the trial court did not err in denying the motion. *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976).

## VI

### FAILURE TO GIVE INSTRUCTIONS

■ Appellant contends that the trial court erred in failing to give the "Hash" instruction, see *Hash v. State*, 48 Ariz. 43, 59 P.2d 305 (1936), which states that no conviction can stand on suspicion, mere probability or supposition. We do not agree. Since the trial court did instruct that the jury was not to guess about any fact and that the state had to prove the defendant guilty beyond a reasonable doubt, there was no error. *State v. Brosie*, 24 Ariz.App. 517, 540 P.2d 136 (1975), aff'd

113 Ariz. 329, 553 P.2d 1203 (1976). Appellant contends the trial court erred in failing to give his Instruction No. 11 which stated that for a conviction to be based on circumstantial evidence the evidence must be inconsistent with every reasonable hypothesis of innocence. Since this is no longer the law in Arizona the court did not err in refusing this instruction. *State v. Harvill*, 106 Ariz. 386, 476 P.2d 841 (1970).

■ The trial court refused to give appellant's Instruction No. 12. This dealt with the definition of "property of another", as that term is used under the theft statutes, A.R.S. Sec. 13–1801(6) and Sec. 13–1901(3). The instruction and definition had absolutely no relevancy to this case and was properly refused.

■ Instructions 13, 14 and 15 offered by appellant were covered by other instructions given by the court which defined the crime of robbery. Furthermore, the instructions were erroneous in that they required the jury to find that appellant was the one who took the property from the victims by means of force. Since appellant was being tried as an accomplice, see A.R.S. Sec. 13–301 and Sec. 13–303(A)(3), his tendered instructions were erroneous.

■ Appellant requested the court to instruct the jury that mere association with the perpetrator of a crime does not establish a person's guilt (Instruction No. 18) and that mere presence at the scene of a crime does not make one an aider and abetter (Instruction No. 19). The trial court refused these instructions. Appellant contends this was error. We do not agree. Since appellant admitted that it was supposed to be a burglary and not a robbery, these instructions are irrelevant.

■ Appellant complains of the refusal to give his voluntariness instruction. The trial court did give a voluntariness instruction following the language of RAJI Criminal Standard No. 7. There was no error in refusing to give appellant's instruction. *State v. Denny*, 27 Ariz.App. 354, 555 P.2d 111 (1976).

■ Instruction No. 21 submitted by appellant tells the jury that the crime of robbery includes the less serious crime of

burglary. Appellant contends that the trial court erred in refusing to give this instruction and to instruct the jury that if the state failed to prove the robbery it could convict him of burglary. This instruction is erroneous since burglary is not a lesser included offense of robbery.

■■■■ Appellant also contends the trial court erred in failing to instruct the jury that it could find him guilty of the lesser included offense of theft. For an instruction on a lesser offense to be considered as proper, two conditions must be met. First, the crime must be lesser included in the offense charged and, second, the evidence must support the giving of the instruction. The determination which must be made before the lesser included instruction can be given is whether on the evidence the jury could rationally find that the state had failed to prove an element of the greater offense. This element must be required to convict of the greater but not of the lesser offense. It must be an element which necessarily distinguishes the greater from the lesser. Robbery, the greater offense, requires the taking to be accomplished by force. Theft, the lesser offense, does not require such an element. *State v. Dugan*, 125 Ariz. 194, 608 P.2d 771 (1980). The facts in the record clearly indicate that the money was taken from the victims at gunpoint. The jury could not reasonably find from the evidence that the state failed to prove the distinguishing element of force necessary to sustain a conviction for robbery. The trial court therefore did not err in refusing the instruction.

## VII

### THE STATE'S CROSS–APPEAL

The state contends that the trial court erred in vacating the jury's finding that the felony was of a dangerous nature. It asserts that the rules of criminal procedure do not provide for the vacation of such a finding and, that the jury could have found that appellant at least intended a "strong arm" robbery. It further asserts that in any event inconsistent verdicts are not grounds for reversal. In order for a felony to be dangerous in nature, it must involve the use or exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another. A.R.S. Sec. 13–604. It is easy to see how the jury could have concluded that the robbery was dangerous since the trial court did not instruct as to the statutory definition. However, in view of our disposition we need not answer this question.

Reversed and remanded for new trial.

HATHAWAY, C. J., and RICHMOND, J., concur.

### SUPPLEMENTAL OPINION

HOWARD, Judge.

Both the state and defendant contend that our opinion contains an internal inconsistency in that we stated that the confessions of appellant and Bardwell were interlocking but then concluded that the failure to give a limiting instruction was not harmless error because ". . . Bardwell's confession exceeds that of appellant since Bardwell stated that when he entered the store he announced it was a robbery and that appellant was aware of what Bardwell was doing."

■■■■ The "interlocking confession" doctrine does not require absolute identity of statements. It is sufficient if the two confessions are substantially the same and consistent concerning the major elements of the crime involved. *United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45 (2nd Cir. 1975), cert. den., 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102. Confessions "interlock" if they are consistent on the major elements of the crime and there is nothing in the co–defendant's confession that implicates the defendant any more in the commission of the crime than did the defendant's own confession. *State v. Mata*, 125 Ariz. 233, 609 P.2d 48 (1980).

We do not retreat from our position that the confessions here were interlocking. The clear inference of appellant's confession is his knowledge that Bardwell was going to rob the market. However, as we pointed out, the interrogator did not "nail down" the defendant, thus allowing leeway for defendant's strategy at the trial. We were

wrong in saying that Bardwell's confession "exceeded" appellant's. Bardwell's confession merely states explicitly what appellant stated implicitly. In *Parker v. Randolph*, supra the court states at 99 S.Ct. 2140:

"The possible prejudice resulting from the failure of the jury to follow the trial court's instructions is not so 'devastating' or 'vital' to the confessing defendant to require departure from the general rule allowing admission of evidence with limiting instructions."

The lack of "devastation" because of the interlocking confessions does not mean that the error was harmless beyond a reasonable doubt. The evidence here was not overwhelming even with appellant's confession. His explanation was not incredible. Without the limiting instruction the jury might have used Bardwell's confession to discredit appellant's explanation of his own confession. Such error would not be harmless. We affirm our previous disposition and deny the parties' motions for rehearing.

HATHAWAY, C. J., and RICHMOND, J., concur.