811 P.2d 1103

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Troy A. GASCON, Defendant–Appellant.**

No. 17196.

Court of Appeals of Idaho.

Oct. 12, 1989.

Petition for Review Granted
Dec. 13, 1989.

Michael J. Wood, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Peter C. Erbland argued, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

This case gives occasion for determining whether a temporary roadblock established to apprehend the perpetrator of a serious felony is constitutionally and statutorily permissible. Troy Gascon entered a conditional plea of guilty to robbery, reserving his right on appeal to challenge the district court's denial of his motion to suppress. The main issue is whether the district court erred in holding that a search of Gascon's vehicle, following a stop at a temporary roadblock, did not violate Gascon's constitutional rights, thus not requiring suppression of evidence seized in the search or

statements made later to the officers. We affirm.

Because we are reviewing a trial court's ruling on the constitutional validity of a warrantless search, our standard of review is bifurcated. We will defer to findings of fact supported by substantial evidence. But, we will freely review the trial court's determinations as to whether constitutional requirements had been satisfied in light of the facts found. *See State v. Rusho,* 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986). We note at the outset that the burden of showing that a warrantless seizure or search is reasonable rests with the state. *State v. Yeates,* 112 Idaho 377, 383, 732 P.2d 346, 352 (Ct.App.1987). We also note that the facts of this case were not well developed by the state during the suppression hearing. Indeed, the facts are meager on some points. However, the record and the transcript of the suppression hearing support the following facts.

On the morning of March 26, 1987, a man carrying a cardboard box entered the Twin Falls Bank and Trust. The man approached a teller and, explaining that his box contained a bomb, demanded money. After the teller complied, the man fled the bank on foot. No evidence was produced at the suppression hearing showing the time of the robbery. Nor was there any indication that the robbery suspect had a vehicle.

Sometime prior to 11:00 a.m. on March 26, local law enforcement units received a radio report of the robbery. A description of the robbery suspect was given, including the clothing he wore: a tan or brown baseball cap, a light-colored jacket and Levis. The radio report further indicated that the suspect had displayed a box allegedly containing a bomb.

A few minutes later other nearby law enforcement units were asked to help establish a temporary roadblock in response to a robbery which had "just occurred." A roadblock was created at the south end of the Perrine Bridge—a bridge spanning the Snake River Canyon and offering the nearest access from Twin Falls to the interstate highway north of the canyon. At least two marked police cars, with their overhead lights flashing, barricaded all but one of the northbound traffic lanes. In addition, traffic "cones" were placed on the highway to guide traffic into the open lane. This caused all vehicles traveling from Twin Falls to slow down almost to a crawl as they proceeded through the open lane. Positioned about twenty feet apart along this traffic lane were two uniformed sheriff's deputies, Deputy Putzier of Twin Falls County and Deputy Webb of Jerome County. Reserve Deputy Cogswell of Twin Falls County was also assisting at the roadblock. The deputies were looking into the slowly passing vehicles, watching for persons matching the robbery suspect's description. Trooper Johnston of the Idaho State Police stationed his cruiser at a point on the roadway about 150 to 200 yards south of the bridge to observe oncoming vehicles. He testified that the roadblock was visible from his position.

While at his vantage point, Trooper Johnston's attention was drawn to a small station wagon occupied only by a male driver. During the station wagon's approach to the roadblock, Trooper Johnston noticed the driver lean over to the passenger's side at least twice. When the station wagon was three vehicles back from the roadblock, the driver stopped and laid completely over into the passenger's side, disappearing from view for at least a second. Trooper Johnston, believing the driver's actions warranted investigation, left his position and drove toward the station wagon.

Deputy Putzier was just waiving the station wagon along when Trooper Johnston, using his loudspeaker, alerted the deputies that the vehicle should be stopped because the driver was "stuffing something under the seat." Deputy Webb then noticed the driver dip his shoulder as if reaching toward the floorboard. Deputies Webb and Cogswell motioned for the station wagon to stop, but it continued past them until they yelled at the driver to stop. Deputy Cogswell testified that the driver matched the physical description of the robbery suspect. Deputy Webb testified that, due to Trooper Johnston's statement and his own observa-

tion of the driver's movements, he believed the driver may have been hiding a weapon. Deputy Webb approached the driver's door and ordered the driver, Gascon, out. Deputy Cogswell opened the front passenger's door in order to better view Gascon and make sure he was not armed. Two one dollar bills were visible on top of a console near the front seat. When the driver's door opened, the bills blew off the console.

Deputy Webb escorted Gascon to the rear of the vehicle but he neither questioned nor frisked Gascon. Meanwhile, Deputy Cogswell looked on the front floor of the vehicle to see if the two dollars had blown there. He saw the visor of a brown baseball cap protruding from under the front passenger's seat. He removed the baseball cap and placed it on the seat. He then reached under the passenger's seat to check for weapons. No weapon was found but he did find a jacket which he then placed on the seat. At this time Deputy Webb returned. Deputy Webb reached under the driver's seat to check for weapons. He found a plastic bag which felt like it contained a stack of currency. He replaced the bag and then arrested Gascon for robbery. The currency and clothing later were confiscated during an inventory search of Gascon's vehicle at the police station. Gascon contends that if the roadblock and arrest were illegal, the inventory search would also be illegal as "fruits of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The officer testified that Gascon's arrest occurred at about 11:00 a.m. and that the temporary roadblock had been operating for about twenty minutes prior to the arrest. During the roadblock the officers had detained only one other vehicle and had questioned the driver.

Gascon was transported to the Twin Falls Police Department. There he was advised of his constitutional rights and signed a written waiver form, agreeing to talk with the officers. During interrogation, he admitted his guilt after being shown the money found in his station wagon. He was asked to give a written statement, but he declined until he could consult

an attorney. The questioning stopped. Approximately ten minutes later, a Federal Bureau of Investigation agent, who was present during the initial interrogation, began again to question Gascon. The agent reminded Gascon of his rights and specifically asked Gascon if he would be willing to talk without an attorney. Gascon replied, "I guess so." When the agent asked for a more explicit response, Gascon answered, "Okay," or words to that effect. The agent then asked Gascon about some handwritten notes found in his car. Gascon admitted to writing the notes but denied using them in any bank robberies. The second interrogation then ceased.

Gascon contends the district court erred in several respects in denying his motion to suppress. First, he maintains the district court's ruling that the temporary roadblock was lawful is based on findings of fact not supported by the evidence. Second, he argues that the officers lacked reasonable, articulable suspicion to justify the stop of his vehicle at the temporary roadblock. Consequently, the warrantless search of his vehicle was unreasonable. Finally, he submits that his right to counsel was not honored by the officers during his interrogation. We will address each point in turn.

## TEMPORARY ROADBLOCK

■ In its memorandum decision denying Gascon's motion to suppress, the district court made the following findings.

The roadblock established in the instant case was reasonable and lawful. First, the law enforcement officials involved had reasonable cause to believe that a serious felony had recently been committed. The record in this case establishes that immediately after the armed robbery of the bank, law enforcement officials were contacted and responded promptly. Second, the nature of the crime in question was serious; that being, an armed robbery with the use, or alleged use, of a bomb. Third, the roadblock was reasonably necessary to permit a search for the perpetrator of this felony in view of the seriousness and

special circumstances involved. While Twin Falls is not an island, the geography is unique in that it was reasonable to believe that the armed robber would be fleeing town by way of only three or four different routes. The roadblock at the Perrine Bridge secured flight in the direction of the nearest access to the interstate highway. Finally, the manner in which the roadblock was conducted was also reasonable. The record establishes that the officers on-site were waving most cars through and were looking only for suspects or evidence of crime which matched the description given by bank employees.

Gascon correctly notes that the statement *"immediately* after the armed robbery of the bank, law enforcement officials were contacted and responded *promptly"* (emphasis added) is not supported by the evidence. No facts were given indicating the exact time of the robbery or the actual time of the initial officers' response. However, the evidence permits a reasonable inference that the officers were not slow or dilatory in responding to the robbery. Moreover, in context the statement merely amplifies the well-supported finding that the officers had reasonable, even probable, cause to believe a serious felony had been committed.

The next challenged finding is that a bomb was used in the "armed robbery." The actual finding of the court, quoted in full above, must be viewed in context of the question being discussed by the judge: was the officers' use and conduct of the roadblock a reasonable response to the information reported to them? Most of the officers testified that the radio reports indicated that the robbery suspect had claimed to have a bomb when he robbed the bank. No objection was made to the officers' testimony. Moreover, the evidence was admissible to show what information the officers had at the time. The reasonableness of the officers' conduct in light of the information they had before them was clearly in issue at the suppression hearing. The challenged finding is not erroneous.

Gascon challenges the third finding that "special circumstances" were involved. The only special circumstance noted by the district court was the geography of the area. Included in this special circumstance is another factual statement challenged by Gascon: "[I]t was reasonable to believe that the armed robber would be fleeing town by way of only three or four different routes." Gascon again correctly points out that no evidence was presented showing the officers had reasonable cause to believe the robbery suspect had access to a vehicle or would be leaving town. Apparently, the district court took judicial notice of the geography around Twin Falls. *See* I.R.E. 201. We see no error. Reference to any local relief or highway map would lead to the inescapable conclusion that the geography around Twin Falls is unique and that the Perrine Bridge provided the nearest access to an interstate highway.[1] While it is true that the officers had no information about a suspect vehicle, this does not mean that it was unreasonable for them to believe that a robbery suspect would attempt flight from Twin Falls by way of a vehicle. Common sense suggests such a possibility. Trained police officers need not ignore tactical advantages they may employ in effectively identifying and apprehending fleeing felons. In sum, we believe the evidence—though it is a bare minimum—and the reasonable inferences drawn from it, supports the district court's findings. Nonetheless, we freely review whether the temporary roadblock here met constitutional and statutory requirements.

We are limiting our discussion to the legality of a temporary roadblock designed to apprehend a fleeing felon. The constitutional validity of such a practice is judged by balancing its intrusion on Fourth Amendment interests against its promotion of legitimate governmental interests. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Implemented in this balancing test is a standard of rea-

---

1. Moreover, because the facts are not reasonably subject to dispute, we could take judicial notice that the Perrine Bridge is the principal link between Twin Falls and major highways traveling to the north, east and west from Twin Falls. I.R.E. 201.

sonableness, requiring "that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." *Id.* at 654, 99 S.Ct. at 1396 (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)).

We believe the governmental interest in detecting and capturing fleeing felons justifies a limited and reasonable intrusion on the Fourth Amendment interests of motorists detained by a temporary roadblock. *See Lacy v. State*, 608 P.2d 19 (Alaska 1980); *State v. Torres*, 29 Utah 2d 269, 508 P.2d 534 (1973); *State v. Silvernail*, 25 Wash.App. 185, 605 P.2d 1279 (1980), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51, *reh'g denied*, 449 U.S. 1026, 101 S.Ct. 596, 66 L.Ed.2d 488 (1980). An objective standard for measuring the reasonableness of such an intrusion is whether the officers have probable cause to believe a serious felony is being or has recently been committed, *State v. Silvernail, supra,* and the officers reasonably believe the perpetrator is using the highways or streets, I.C. § 19–621.

As noted, the officers here had probable cause to believe a serious felony had been committed. The officers knew the crime was a bank robbery where an alleged bomb had been displayed. The officers had a reliable, albeit general, description of the robbery suspect. Although the officers had no information indicating the suspect had access to a vehicle, their decision to establish a temporary roadblock at the Perrine Bridge was a reasonable tactical response. There were other highway routes out of Twin Falls, but the bridge offered the nearest access to an interstate highway. The evidence does not suggest that the temporary roadblock was a product of arbitrary action or unconstrained discretion. The officers did not stop every vehicle. Rather, motorists had to tolerate only a minimal intrusion as they proceeded slowly through the temporary roadblock while officers visually checked for persons matching the robbery suspect's description. We conclude that the temporary roadblock was constitutionally permissible.

■ We next examine the statutory validity of the temporary roadblock. Where reasonable belief of criminal wrongdoing is present, law enforcement officers in Idaho have legislative authority to establish temporary roadblocks. I.C. § 19–621. In § 19–622 the Legislature has prescribed four minimum requirements which, if time and circumstances allow, should be met in establishing temporary roadblocks.[2] Gascon challenges the statutory validity of the temporary roadblock here based on the noncompliance with all minimum requirements in § 19–622. The undisputed testimony of the state's witnesses at the suppression hearing simply showed that the roadblock was set up to stop only northbound traffic at the Perrine Bridge. At least two marked police cars, with their overhead lights flashing, barricaded all but one of the northbound lanes. Traffic cones were placed on the highway in advance of the roadblock to guide traffic into the open

---

2. Section 19–622 of the Idaho Code reads as follows:

For the purpose of warning and protecting the traveling public, the minimum requirements to be met by such officers establishing temporary road blocks, if time and circumstances allow, are:

1. The temporary road block must be established at a point on the highway or street clearly visible at a distance of not less than 100 yards in either direction.

2. At the point of the temporary road block, a sign shall be placed on the center line of the highway or street displaying the word "stop" in letters of sufficient size and luminosity to be readable at a distance of not less than 50 yards, in both directions, either in daytime or darkness.

3. At the same point of the temporary road block, at least one (1) blue light, on and burning, must be placed at the side of the highway or street which shall be a flashing or intermittent beam of light, clearly visible to the oncoming traffic, at a distance of not less than 100 yards.

4. At a distance of not less than 200 yards from the point of the temporary road block, warning signs must be placed at the side of the highway or street, containing any wording of sufficient size and luminosity, to warn the oncoming traffic that a "police stop" lies ahead. A burning beam light, flare or reflector must be placed near such signs for the purpose of attracting the attention of the traffic to the sign.

lane. Officer Johnston testified that the roadblock was visible to approaching motorists at his position which was from 150 to 200 yards from the roadblock.

While Gascon challenged certain actions of the officers in attempting to show that operation of the roadblock was constitutionally "unreasonable," in the trial court he did not argue that the roadblock was unreasonable due to the failure of the officers to comply fully with I.C. § 19–622. This argument is being made for the first time on appeal. We note further that the district court made no findings concerning compliance with § 19–622. The district court merely stated that "I.C. § 19–622 sets forth the minimum [light and warning] requirements to be met by officers, 'if time and circumstances allow,' in establishing roadblocks."

> Ordinarily, we will not entertain substantive issues raised for the first time on appeal. *Standards of Appellate Review*, § 3.5.1, IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc., 1985). An exception to this rule exists when the doctrine of "fundamental error" applies; that is, the error is grounded in a criminal defendant's due process right to a fair trial. (Citations omitted.)

*State v. Wright*, 115 Idaho 1043, 1048, 772 P.2d 250, 255 (Ct.App.1989)

We are not convinced that a purported failure of the officers to comply fully with the "minimum requirements" of I.C. § 19–622, "if time and circumstances allow," constitutes fundamental error. The statute was enacted for the stated purpose of "warning and protecting the traveling public" who might otherwise suddenly and unexpectedly encounter a temporary roadblock under circumstances that could jeopardize safety or cause undue alarm or even fear. We seriously doubt, however, that our Legislature intended to establish standards of reasonableness for purposes of the Fourth Amendment or of Article 1 § 17 of the Idaho Constitution. Accordingly, while the requirements of I.C. § 19–622 might be of greater importance in a case involving an accident at a roadblock or

involving failure to comply with an officer's directions to stop at a roadblock, the statute is not controlling here. At most, the failure to comply with the statute is but one of the factors to consider in determining the reasonableness of the officers' conduct under a totality of the circumstances. *See, e.g., State v. Jones*, 483 So.2d 433 (Fla.1986); *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983). However, since we find that this issue was not presented to the trial court and that fundamental error is not shown here, we decline to further discuss this argument by Gascon. *State v. Hernandez*, 107 Idaho 947, 694 P.2d 1295 (1983); *State v. Wright, supra.*

## INVESTIGATORY STOP

■ Gascon next challenges the legality of the investigatory stop of his vehicle. He argues that the officers lacked specific, articulable facts giving rise to a reasonable suspicion that he was engaged or had been engaged in criminal activity. Particularly, Gascon contends his movements observed by Trooper Johnston and Deputy Webb were innocent, and not suspicious, furtive gestures.

It is axiomatic that an investigatory stop of a vehicle is a "seizure" within the meaning of the Fourth Amendment. To justify such an intrusion, the officers must possess facts which, in the totality of the circumstances, yield an articulable and reasonable suspicion that either the vehicle or the occupant is subject to seizure for violation of the law. *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123 (1984); *State v. Simpson*, 112 Idaho 644, 734 P.2d 669 (Ct. App.1987), *rev. denied*, 112 Idaho 948, 738 P.2d 94 (1987). Further, where officers know that a serious felony has just been committed, the question is narrowed to whether there is a reasonable suspicion that the person under observation is connected with the crime. *State v. Ott*, 54 Or.App. 309, 634 P.2d 825 (1981) *petition denied*, 292 Or. 334, 644 P.2d 1127 (1981); *State v. Denny*, 27 Or.App. 455, 556 P.2d 719, 720–21 (1976); *see also* LaFave, *"Street Encounters" and the Constitution*, 67 Mich.L.Rev. 40, 79–81 (1968). The

officers here knew a robbery had been committed by a man claiming to have a bomb. They knew the suspect fled the scene on foot. They had a general description of the suspect. Consequently, the officers' attention was reasonably narrowed to persons whose activities or descriptions raised a reasonable suspicion that they may be connected with the robbery. In assessing such a situation, trained officers may consider the modes and patterns of robbers, drawing inferences and making deductions as to the suspect's probable conduct. *See United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also State v. Haworth, supra,* 106 Idaho at 406, 679 P.2d at 1124.

Gascon's conduct of leaning into the passenger's side of his vehicle while approaching a visible roadblock reasonably could have raised Trooper Johnston's suspicions. Given the fact that he was looking for an armed robbery suspect, Trooper Johnston was understandably suspicious of Gascon's movements toward the floor of his vehicle. It was permissible for Trooper Johnston to infer that Gascon was hiding something from the officers at the roadblock. Additionally, Deputy Cogswell testified that, upon his initial observation, Gascon met the general description of the robbery suspect. Deputy Webb also observed Gascon make a movement toward the floorboard while the deputies were attempting to stop him. Given all the facts, and the permissible inferences drawn therefrom, Gascon's actions would at least excite a reasonable suspicion that he was connected with the robbery or was engaged in some wrongdoing. *Compare Coffman v. State,* 26 Ark.App. 45, 759 S.W.2d 573 (1988) (motorist's attempt to avoid a roadblock created reasonable suspicion for investigatory stop); *State v. Dall,* 305 A.2d 270 (Maine 1973) (dicta that passenger's movement of bending forward in his seat could raise reasonable suspicion for stop). Furthermore, the evidence does not suggest that the stop was the result of arbitrary action or made for the purpose of harassment, factors considered important by some courts. *E.g., State v. Clovis,* 127 Ariz. 75, 618 P.2d 245 (App.1980). Under the totality of the circumstances, we conclude the stop of Gascon's vehicle was based upon articulable and reasonable suspicion.

## SEARCH

■ Having concluded that the officers acted lawfully in stopping Gascon at the temporary roadblock, we now determine whether the subsequent search of Gascon's vehicle was valid. Gascon contends the officers had no lawful purpose for searching his vehicle because immediately after he was stopped, Deputy Webb removed him from the vehicle but did not question him about his movements or frisk him. Therefore, he contends the officers had no reason to enter his vehicle and search for weapons. Deputies Webb and Cogswell testified that due to Trooper Johnston's remark over the loudspeaker, Gascon's matching the robbery suspect's description, Gascon's movement prior to stopping, Gascon's delay in stopping, and the information they had about the robbery, they believed Gascon may be armed or have immediate access to a dangerous weapon, particularly a bomb. These same facts would lead the officers to reasonably conclude that any weapon or bomb would more likely be under the seat than on Gascon's person. Although Webb did not immediately frisk Gascon for a weapon once Gascon was out of the car, Webb was nonetheless concerned for his safety. He asked another officer to "cover him" and to watch Gascon while he returned to the driver's door.

In light of the officers' expressed concerns for their safety, it was reasonable for Deputy Cogswell to open the passenger door of Gascon's vehicle as a precaution for the protection of the officers. Cogswell testified that the sun's glare on the window impeded his view of Gascon and that to more clearly observe Gascon's hand movements while Gascon was exiting the vehicle he needed to open the door. Once his position was lawfully gained, Deputy Cogswell could seize any items in plain view, so long as the items were apparently connected with criminal activity. *See State v. Rusho,* 110 Idaho 556, 716 P.2d 1328 (Ct. App.1986). While looking for the currency

which had blown off the console, Deputy Cogswell saw, in plain view, the visor of a brown baseball cap. He had reasonable cause to believe that the cap may be connected with the robbery. The seizure of the cap was permissible.

In *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court held that when officers make a lawful investigatory stop of a vehicle, a protective search of the vehicle,

> limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." [Citations omitted.]

*Id.* at 1049–50, 103 S.Ct. at 3481 (quoting *Terry v. Ohio,* 392 U.S. at 21, 27, 88 S.Ct. at 1879, 1883, 20 L.Ed.2d 889 (1968)). Initially, we note that Gascon's presence outside his vehicle did not diminish the justification for the deputies' protective search. *Michigan v. Long, supra; United States v. Longmire,* 761 F.2d 411 (7th Cir.1985). Deputies Webb and Cogswell articulated the facts they had for believing Gascon may have a bomb, may have immediate access to a weapon or may have been hiding a weapon. Both deputies explained that they searched the area under the front seats to see if weapons had been hidden there; that was the sole justification for their search. Once the deputies determined no weapons were hidden in the limited area of their search, they stopped searching. Indeed, upon discovering that the plastic bag under the driver's seat contained something which felt like currency, Deputy Webb replaced the bag intact. These facts show that the deputies concentrated their search to the limited area where Gascon could have placed a weapon. We conclude that the deputies had a level

of suspicion warranting a limited search for weapons. Consequently, we uphold the limited search of Gascon's vehicle. The district court properly denied Gascon's motion to suppress the evidence found as a result of the search.

### STATEMENTS

■ The final issue Gascon raises is whether his statements to the officers were voluntary. He contends the officers did not honor his right to counsel. The district court summarily noted that no evidence was presented to suggest Gascon's statements were obtained in violation of his constitutional rights.

The burden is upon the state to show by a preponderance of the evidence that, under the totality of the circumstances, the criminal defendant has knowingly and voluntarily waived his right. *See State v. Culbertson,* 105 Idaho 128, 666 P.2d 1139 (1983). The undisputed evidence shows Gascon was informed of his constitutional right to counsel as required by I.C. § 19-853. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is also undisputed that after being notified of his right to counsel and his right to remain silent, Gascon signed a waiver of those rights stating that he would make a statement. Gascon then responded to questions. The officers testified that when they showed Gascon the money found under the seat of his vehicle, he admitted to committing the robbery by displaying a box at the bank and giving a note to the teller saying that he had a bomb. The officers testified that after Gascon admitted his involvement in the robbery he was asked to "prepare a written statement." He said at that time that "he would rather talk to a lawyer before doing that." The interrogation then ceased. Within a few minutes the officers learned of some additional evidence and information about Gascon. Gascon was brought back for further interrogation. He was reminded of his rights and stated that he understood them. He was asked if he would respond to further questions about the robbery without an attorney being

present and he agreed to do so. Gascon incriminated himself further by his answers.

Gascon testified differently. He said that before he made the admissions he requested an attorney three times before law enforcement officers finally discontinued the interrogation. The district judge implicitly adopted the officers' statements of the facts. Accordingly, in our view, the question now is whether Gascon's limited request for counsel in the initial interrogation was honored in the second interrogation. If not, any evidence gained by the second interrogation would have to be suppressed. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981); *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977).

We believe the issue is controlled by a recent decision of the United States Supreme Court in *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987)—a case not cited to us by either of the parties. In that case, the accused said that "he would not give the police any written statements but he had no problem talking about the incident." *Id.* at 525, 107 S.Ct. at 830. Later the accused reiterated that "he was willing to talk about [the incident] verbally but he did not want to put anything in writing until his attorney came." *Id.* at 526, 107 S.Ct. at 830. A majority of the Supreme Court held that the officers did not violate *Edwards* by continuing to talk with the accused under these circumstances. The Supreme Court emphasized that the accused's request for counsel was "accompanied by affirmative announcements of his willingness to speak with the authorities." *Id.* at 529, 107 S.Ct. at 832.

In the present case, under the version of the facts implicitly adopted by the district court, Gascon indicated his willingness to talk to the officers by signing a *Miranda* waiver form and then answering questions. When Gascon invoked his right to counsel upon being asked to sign a written statement, the interrogation ceased. When interrogation resumed, Gascon was reminded of his *Miranda* rights and he again indicated his willingness to talk. We uphold the resumed interrogation in light of *Barrett.*

We conclude that the district court committed no error in refusing to suppress the evidence seized as a result of the roadblock or obtained from Gascon following his arrest. The judgment of conviction is affirmed.

WALTERS, C.J., and BURNETT, J., concur.