[No. 6598–0–I.   Division One.   January 14, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY
LEROY SILVERNAIL, *Appellant.*

*Fulle & Grad* and *Harvey Grad,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Mary Kay Barbieri, Deputy,* for respondent.

RINGOLD, J.—Gary Leroy Silvernail appeals a judgment and sentence entered upon a jury conviction of first–degree burglary while armed with a deadly weapon and a firearm. He raises issues concerning a search of his car, the admissibility of a statement, the trial court's instructions and the enhancement of his punishment under RCW 9.41.025.

## THE SEARCH AND THE STATEMENT

On December 1, 1977, three men forced their way into the Vashon Island home of Kenneth Stone, held him at gunpoint, beat him about the head and back with their fists and gun, burglarized his safe, and tied and gagged him. During a struggle on the couch, the gun was fired close to

Stone's head but nobody was hit. As they were leaving, Stone heard someone ask, "How much time do we have left," and another person responded, "Five minutes." Stone concluded they were going to catch the ferry. After loosening the cords with the help of a neighbor, he phoned the police, told them what happened and described the suspects. These descriptions were forwarded to officers awaiting the arrival of the ferry in Seattle. The descriptions indicated the suspects were armed.

Upon arrival of the ferry, the dock was blocked by police cars so departing cars would have to slow to almost a stop. All cars were stopped and searched for suspects. It was a cold day and two people wearing light clothing and matching the suspects' general description were arrested as they walked off the boat. It was not known at that time whether they were involved in the crime. They were subsequently identified as participants in the burglary.

After about 35 or 40 minutes, Silvernail's car left the ferry and was detained. He was told the officers were investigating a robbery, and he was directed to turn off the vehicle and hand over the trunk key. Silvernail responded by saying that the key would not open the trunk but what they were looking for was in there. He was then placed under arrest. A screwdriver was used to pry open the trunk in a search for other suspects. Nobody was inside the trunk although a suitcase and a shotgun were observed. The trunk was closed, the vehicle was impounded and subsequently searched with Silvernail's written consent. The search uncovered two shotguns, a rifle, jewelry, money, and suspected narcotics items in the trunk. There was also a small automatic in the back seat.

Silvernail contends his detention was illegal because the State did not establish a reasonable suspicion he was involved in criminal conduct and did not prove facts sufficient to justify a dragnet for suspects.

The State argues the record establishes good cause to believe the suspects were on the ferry and were armed and

dangerous. It is argued that the societal interest in apprehending them outweighed the invasion of privacy involved in the brief detention of each departing passenger.

We agree with Silvernail that the record lacks specific facts to warrant a reasonable suspicion focused on his car. *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975); *State v. Davis,* 12 Wn. App. 32, 527 P.2d 1131 (1974). There was, however, probable cause to believe the suspects were somewhere on the ferry, and individualized suspicion is not always a prerequisite to a constitutional search or seizure. *United States v. Martinez–Fuerte,* 428 U.S. 543, 560–61, 49 L. Ed. 2d 1116, 1130, 96 S. Ct. 3074 (1976).

*Martinez–Fuerte* upheld the border patrol's use of reasonably located permanent inland checkpoints to examine and sometimes briefly question the occupants of all passing vehicles. In so holding, the court refused to require the existence of any individualized suspicion that a particular car contained illegal aliens. The public interest in stemming the flow of illegal aliens was held to justify this limited intrusion on the traveling public. Critical to the court's reasoning was the observation that this routine procedure was not subject to the unbridled discretion of a field officer. It thereby minimized the risk of abusive or harassing stops. It also operated visibly to reassure motorists that the stops were duly authorized and believed to serve the public interest. The intrusion on legitimate traffic was brief and minimal. Further detention or any search of a car required consent or probable cause that it contained illegal aliens. *United States v. Martinez–Fuerte, supra,* 428 U.S. at 559, 567, 49 L. Ed. 2d at 1129, 1133–34; *United States v. Ortiz,* 422 U.S. 891, 45 L. Ed. 2d 623, 95 S. Ct. 2585 (1975).

*Martinez–Fuerte* represents an exception to the general rule that "some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure." *United States v. Martinez–Fuerte, supra,* 428 U.S. at 560, 49 L. Ed. 2d at 1130; *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Individualized suspicion has been required when roving border patrols stop a vehicle,

*United States v. Brignoni–Ponce,* 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975), and when officers exercise their authority to randomly stop vehicles for a license or registration check. *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). Unlike *Martinez–Fuerte,* these cases involved the grave danger of uncontrolled discretion, and that danger outweighed the public interest in the law enforcement activity. *Delaware v. Prouse, supra; United States v. Brignoni–Ponce, supra,* 422 U.S. at 882–83, 45 L. Ed. 2d at 617.

These decisions are not dispositive of the issue presented here, but they provide guidelines for balancing the public interest in capturing fleeing felons against the Fourth Amendment interests of a motorist detained by a temporary checkpoint or roadblock. Also instructive is the following language from Justice Jackson's dissent in *Brinegar v. United States,* 338 U.S. 160, 183, 93 L. Ed. 1879, 1894, 69 S. Ct. 1302 (1949).

> If we assume, for example, that a child is kidnaped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime. But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger.

█ Well defined safeguards are essential to protect the public against indiscriminate use of roadblock searches. A useful guideline is provided by the *Model Code of Pre–Arraignment Procedure* § 110.2(2) (Proposed Official Draft, 1975) which states that a

> law enforcement officer may, if
> > (a) he has reasonable cause to believe that a felony has been committed; and
> > (b) stopping all or most automobiles, trucks, buses or other such motor vehicles moving in a particular

direction or directions is reasonably necessary to permit a search for the perpetrator or victim of such felony *in view of the seriousness and special circumstances of such felony,* order the drivers of such vehicles to stop, and may search such vehicles to the extent necessary to accomplish such purpose. Such action shall be accomplished as promptly as possible under the circumstances.

(Italics ours.) 3 W. R. LaFave, *Search and Seizure* § 9.5(a), at 141 (1978).

We approve this standard and construe the "reasonably necessary" language to limit the use of roadblocks to circumstances where there is a reasonable likelihood of success. The time elapsed or the availability of alternative paths of escape could render a roadblock unreasonable. Furthermore, the information that a serious felony has recently been committed and that suspects fled in a particular direction must be reliable. *See* 3 W. R. LaFave, *Search and Seizure* § 9.5(a), at 141–44 (1978).

Under such circumstances, the momentary intrusion on the traveling public and the brief opening of the car trunk are reasonable even though the very nature of the procedure means that individualized suspicion is absent and the scope of the search is broader than the detention allowed in *Martinez–Fuerte.* This type of roadblock and search is nonetheless more akin to the fixed checkpoint in *Martinez– Fuerte* than to the random stops in *Brignoni–Ponce* and *Prouse.* There is no unbridled discretion to establish roadblocks, and any danger of harassment is minimized by the probable cause requirement, the limited scope of the search and the other limits on the authority to use this procedure. The existence of probable cause to believe a felony has been committed justifies the greater intrusion of a limited search of each car for suspects.

Although we approve the use of roadblocks in proper cases, we must keep in mind that "the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry . . ." *Davis v. Mississippi,* 394 U.S. 721, 726, 22 L. Ed. 2d 676, 681, 89 S. Ct. 1394

(1969). Roadblocks to capture fleeing suspects,[1] therefore, can only be upheld in cases of the highest emergency. The safeguards we have listed are essential to preserve the protections of the Fourth Amendment.

In the present case, the officers had probable cause to believe a serious felony had been committed. Information about the nature of the crime and the means of flight had been reliably reported by the victim. This information was coupled with special circumstances which justified the officers' action at the ferry dock: the crime was violent; it was highly likely that the felons were on the ferry; and there was only one means of departing the ferry. There was, therefore, a reasonable likelihood of success and a minimal intrusion on the traveling public. This roadblock and search for suspects was proper.

Silvernail next challenges the validity of the consent to search his car. Because we hold the search of the trunk to be a reasonable search for suspects, we need not decide whether Silvernail voluntarily consented to that search. We have carefully examined the entire record and have found the subsequent written consent to a complete search of the car to be voluntary. *State v. Johnson,* 16 Wn. App. 899, 559 P.2d 1380 (1977).

Silvernail next contends he was in custody when the officer requested the keys. He argues the request was a question designed to elicit a testimonial response which required a *Miranda* warning. *State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976). We disagree.

The request for the keys to the trunk was an attempt to use reasonable means to search for suspects. It was not designed to elicit a testimonial response and Silvernail's unexpected voluntary admissions were not the product of police questioning. No *Miranda* warnings were required. *See State v. Rodriguez,* 20 Wn. App. 876, 582

---

[1]Our opinion does not address the issue of the legality of roadblocks to check all traffic for violations of the traffic laws. *See Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979).

P.2d 904 (1978); *cf. State v. Dennis, supra* (a request designed to elicit a testimonial act).

## JURY INSTRUCTIONS

The court correctly instructed the jury in part that first–degree burglary requires the State to prove "the defendant or another participant in the crime charged was armed with a deadly weapon or assaulted a person." RCW 9A.52.020. Silvernail contends the trial court erred by not also instructing that an accomplice must be found legally accountable for the conduct of another before he can be found guilty. *State v. Baylor,* 17 Wn. App. 616, 565 P.2d 99 (1977); RCW 9A.08.020.

■ Silvernail's argument misconstrues the State's case against him. Unlike *State v. Baylor, supra,* this is not a case where the State attempted to prove Silvernail was an accomplice as now defined in RCW 9A.08.020(3). No accomplice instruction was required because the State merely proved he was guilty of an offense which included, as one alternative element, certain acts by another participant in the crime. RCW 9A.52.020.

Silvernail's next contention turns on the evidence that during the burglary, he did not hold the gun. He contends the jury should have been instructed that only those persons actually armed with a firearm during the offense can be subject to special findings under RCW 9.41.025 and 9.95.040. Alternatively, he argues the jury must be instructed to find that he was an accomplice before deciding the firearm and deadly weapon issues. *State v. Briggins,* 11 Wn. App. 687, 524 P.2d 496 (1974).

■ Both of Silvernail's contentions are without merit. Under *State v. Willis,* 5 Wn. App. 441, 487 P.2d 648 (1971), he is deemed armed if another accused who participated in the same offense is armed. While *Willis* was premised, in part, on former RCW 9.01.030, the passage of RCW 9A.08-.020 did not change the rule. *Willis* was also premised on the observation that the intent of the deadly weapon and firearm statutes applies with equal force to all participants

in a crime. We believe this reasoning to be sound because the danger to human life is at least as great when several participants decide to use a deadly weapon.[2]

Silvernail's alternative contention fails because he misreads the holding of *State v. Briggins, supra.* It does not require an accomplice instruction. It merely approves the use of one where challenged by the accused as confusing. All that is required is an instruction that one is deemed armed if another participant in the offense is armed.

### APPLICATION OF RCW 9.41.025

Silvernail contends the "rule of lenity" precludes enhancement of punishment under RCW 9.41.025 because possession of a deadly weapon is an element of first–degree burglary. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978).

*Workman* did not establish a constitutional rule, and the State, therefore, contends Silvernail may not raise this issue for the first time on appeal. We disagree. A trial court acts in excess of its jurisdiction if it imposes a sentence contrary to law. *State v. Loux,* 69 Wn.2d 855, 420 P.2d 693 (1966); *State v. Luke,* 42 Wn.2d 260, 254 P.2d 718 (1953), *cert. denied,* 345 U.S. 1000, 97 L. Ed. 1406, 73 S. Ct. 1146 (1953). An issue relating to the trial court's jurisdiction may be raised for the first time on appeal. *State v. Davis,* 41 Wn.2d 535, 250 P.2d 548 (1952); RAP 2.5. This appeal was pending when *Workman* was decided, and Silvernail is entitled to the benefits of that decision. *State v. Miles,* 24 Wn. App. 430, 601 P.2d 971 (1979).[3]

The State next argues that because possession of a deadly weapon is not a necessary element of burglary, the *Workman* rule does not apply. *State v. Foster,* 91 Wn.2d

---

[2]We do not have to address the issue of an accused's liability where he has no knowledge of a coparticipant's possession of a weapon. There was no evidence from which the jury could have found Silvernail was unaware of the gun. Silvernail supplied the gun and it was fired during the burglary.

[3]We express no opinion on the retroactive application of *Workman* in the context of petitions for post–conviction relief.

466, 589 P.2d 789 (1979); *State v. Gross,* 23 Wn. App. 319, 597 P.2d 894 (1979).

The State cannot rely on *State v. Foster, supra,* because unlike first–degree burglary, the second–degree assault charge in that case does not have the possession of a deadly weapon as one of its possible elements. A "deadly weapon" as defined in RCW 9.95.040 or RCW 9A.04.110(6) is not necessary to the proof of any of the means of committing second–degree assault. RCW 9A.36.020.

In *State v. Gross, supra,* we dealt with first–degree rape. Possession of a deadly weapon is a possible means of elevating rape to first degree. Former RCW 9.79.170(1)(a). We disallowed enhancement of punishment because the defendant was charged only under section (1)(a). We noted that no blanket rule can be adopted for every case because when there are alternative means of committing the offense, the use of RCW 9.41.025 depends upon the elements charged.

■ Where the legislature defines alternative means of elevating the degree of a crime (and thereby enhances punishment) and one of those means can also increase punishment under RCW 9.41.025, an ambiguity arises as to the legislature's intent. That ambiguity can be avoided by not alleging the possession of a deadly weapon as one means of committing the crime. *State v. Gross, supra.* Here, several means of elevating the offense to first degree were charged. The resulting ambiguity should be resolved in favor of lenity. *Simpson v. United States,* 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978); *State v. Workman, supra.* Under the information filed by the State in this case, RCW 9.41.025 cannot be used to enhance the punishment of first–degree burglary. *Cf. State v. Gross, supra.*

The judgment is affirmed except for the finding pursuant to RCW 9.41.025. That finding must be stricken and the

case remanded for resentencing.

SWANSON and WILLIAMS, JJ., concur.

Reconsideration denied February 7, 1980.

Review denied by Supreme Court April 3, 1980.