812 P.2d 239

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Troy A. GASCON, Defendant–Appellant.**

No. 18453.

Supreme Court of Idaho,
Twin Falls, March 1990 Term.

April 4, 1991.

Dissent on Denial of Rehearing
June 27, 1991.

Michael J. Wood, Twin Falls County Public Defender, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson argued.

BAKES, Chief Justice.

The defendant-appellant Troy Gascon entered a conditional plea of guilty to robbing a bank. Appellant appeals from the district court's denial of his motion to suppress certain evidence. The case was assigned to the Court of Appeals which affirmed the district court in an opinion issued October 12, 1989. A petition for review was granted and the case reargued before this Court. We now affirm.

On March 26, 1987, a man walked into a bank in Twin Falls with a box. He handed the teller a note, which stated that the box

had a bomb in it, and if the teller handed over all the cash, the bomb would not be detonated. The teller complied, and the man walked out of the bank with his box and the money. The police were notified of the robbery and given a description of the bank robber. The description was of a man approximately five feet four inches, with blonde hair, wearing a baseball cap and jacket. No description of a getaway car was provided, and no one knew for sure whether the robber did in fact enter a vehicle on leaving the bank.

The police immediately set up an "invisible" roadblock just outside of town at the south end of the Perrine Bridge. During the "invisible" roadblock, the police parked alongside the road and attempted to match the description of the felon with the appearance of the drivers and passengers in passing vehicles. Later, the order was given to set up a "visible" roadblock at the same location. To set up the "visible" roadblock, traffic cones were placed on the road leading to the bridge, to merge all the northbound traffic into one lane. Several police cars, with their overhead lights flashing, and traffic cones restricted all but one of the northbound lanes, providing notice to motorists that they should be slowing down as they advanced into the roadblock. An officer in an Idaho State patrol car was stationed approximately 150 yards prior to entry into the roadblock. As the vehicles headed toward the roadblock, the state patrol officer would observe the occupants.

Appellant's vehicle approached the roadblock, and the Idaho State Police officer observed the driver leaning over toward the passenger side and reaching under the seat. The vehicle appeared to have no passengers. As appellant's vehicle proceeded into the roadblock, the police stationed in the roadblock were alerted by the first state patrol officer to stop the vehicle because the driver was thought to be acting suspiciously.

After the vehicle was stopped and its driver ordered to get out, the driver was then escorted to the rear quarter panel of the car. Another police officer, at the same time, opened the door on the passenger side. He found and removed a baseball cap, the visor of which was seen protruding from under the seat, and a jacket which was under the passenger seat. In short order a search under the driver's seat produced a bag of money. The driver was identified as appellant Troy Gascon and was formally placed under arrest. Gascon was taken to the police station, where he was advised of his rights under *Miranda*. Confronted with the physical evidence, he orally confessed to the robbery. He was questioned by the police concerning other notes found in the car which were similar to the note used in this robbery, and he stated that the notes were prepared for use in other robberies that he had contemplated, but he lacked the nerve to carry out. Gascon refused to give a written statement until he was first provided with an attorney, and the interrogation ceased.

The district court denied a motion to suppress the evidence gathered from the roadblock, *i.e.*, the jacket, hat, notes and bag of currency. Gascon then agreed to enter a conditional plea of guilty, did so, was sentenced and then appealed. The case was assigned to the Court of Appeals, which affirmed the district court. This Court granted Gascon's petition for review.

█ Gascon argues that the roadblock did not comply with the requirements of I.C. §§ 19–621 and 19–622. We disagree. I.C. § 19–621 permits roadblocks "for the purpose of apprehending persons *reasonably believed* . . . to be wanted for violation of the laws of this state . . . and using such highways or streets." (Emphasis added.) As we noted in *State v. Henderson*, 114 Idaho 293, 298, 756 P.2d 1057, 1062 (1988), § 19–621 "grants authority to establish roadblocks . . . only where it is reasonably believed that persons have broken the law." Therefore, if the police have a reasonable belief that a crime has been committed—as was the case here—and they have a basic description of the suspect—as was also the case here—§ 19–621 allows them to set up a roadblock on a likely escape route to apprehend the suspect.

In this case, the police were not unreasonable in suspecting that the bank robber, about whom they had a description, would escape by driving over the Perrine Bridge, the quickest route to the interstate highway leading from Twin Falls. As the Court of Appeals stated, "[C]ommon sense suggests such a possibility. Trained police officers need not ignore tactical advantages they may employ in effectively identifying and apprehending fleeing felons." To suggest that it was unreasonable for the police to suspect that the robber would attempt to flee the community in an automobile, using the Interstate highway, ignores the logistic realities which the local trial judge was in the best position to determine. We therefore find no violation of I.C. § 19–621.

Gascon argues further that the roadblock did not comply with the statutory requirements of I.C. § 19–622. This argument is not persuasive. First, Gascon failed to raise this argument before the trial court. It was raised for the first time before the Court of Appeals. Moreover, as the Court of Appeals noted:

> We seriously doubt, however, that our Legislature intended to establish standards of reasonableness for purposes of the Fourth Amendment or of Article 1, § 17, of the Idaho Constitution. Accordingly, while the requirements of I.C. § 19–622 might be of greater importance in a case involving an accident at a roadblock or involving failure to comply with an officer's directions to stop at a roadblock, the statute is not controlling here. At most, the failure to comply with the statute is but one of the factors to consider in determining the reasonableness of the officers' conduct under a totality of the circumstances. *See, e.g., State v. Jones,* 483 So.2d 433 (Fla.1986); *State v. Deskins* [234 Kan. 529], 673 P.2d 1174 (Kan.1983). However, since we find that this issue was not presented to the trial court and that fundamental error is not shown here, we decline to further discuss this argument by Gascon. *State v. Hernandez,* 107 Idaho 947, 694 P.2d 1295 (1983); *State v. Wright,* [115 Idaho 1043, 772 P.2d 250 (Ct.App.1989)].

*State v. Gascon,* 119 Idaho 923, 928, 811 P.2d 1103, 1108 (1989). We agree with the Court of Appeals.

■ Gascon next argues that the stop of his car was unreasonable as the police lacked an individualized suspicion of criminal wrongdoing. He argues that the stop would only have been justified if the police were able to match their description of the suspect with the driver of the vehicle. We find this argument unpersuasive. The police knew a bank had been robbed; they had a general description of the suspect; and they were situated at a place likely for a suspect to make an escape. Officer Johnson, the state police officer out in front of the roadblock, testified that as Gascon's car approached the roadblock, he observed Gascon lean over to the passenger side of the car at least two times and disappear from sight at least once. In light of the circumstances, the moves of the driver were aptly characterized as suspicious and gave rise to a reasonable and articulable suspicion that Gascon could have been involved in the robbery and that he could have been armed and dangerous. We thus hold that the stop of Gascon's vehicle was not improper.

■ We also believe that the ensuing investigation of the vehicle was also proper. The Court of Appeals' reliance upon *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in its opinion was not misplaced. The Court of Appeals stated:

> In *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court held that when officers make a lawful investigatory stop of a vehicle, a protective search of the vehicle,
>
>> limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect

is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." [Citations omitted.]

119 Idaho at 930, 811 P.2d at 1110 (Ct.App. 1989). After the lawful stop of a vehicle, a search of the vehicle and its occupants is permissible if the police officer or officers involved in the stop have a reasonable belief that the driver or occupants of the car may be armed and dangerous. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Here, the officers at the scene had a reasonable belief that the suspect may have had a bomb in his car, since the robber threatened to use a bomb in the holdup. As the Court of Appeals noted, "Once the deputies determined no weapons were hidden in the limited area of their search, they stopped searching. Indeed, upon discovering that the plastic bag under the driver's seat contained something which felt like currency, Deputy Webb replaced the bag intact. These facts show that the deputies concentrated their search to the limited area where Gascon could have placed a weapon. We conclude that the deputies had a level of suspicion warranting a limited search for weapons."

We agree with the Court of Appeals' analysis on this issue.

■ As to Gascon's argument that his *Miranda* rights were violated, the Court of Appeals stated:

It is also undisputed that after being notified of his right to counsel and his right to remain silent, Gascon signed a waiver of those rights stating that he would make a statement. Gascon then responded to questions. The officers testified that when they showed Gascon the money found under the seat of his vehicle, he admitted to committing the robbery by displaying a box at the bank and giving a note to the teller saying that he had a bomb. The officers testified that after Gascon admitted his involvement in the robbery he was asked to "prepare a written statement." He said at that time

that "he would rather talk to a lawyer before doing that." The interrogation then ceased. Within a few minutes the officers learned of some additional evidence and information about Gascon. Gascon was brought back for further interrogation. He was reminded of his rights and stated that he understood them. He was asked if he would respond to further questions about the robbery without an attorney being present and he agreed to do so. Gascon incriminated himself further by his answers.

119 Idaho at 930–931, 811 P.2d at 1110–1111. Based upon those facts, the Court of Appeals concluded:

We believe the issue is controlled by a recent decision of the United States Supreme Court in *Connecticut v. Barrett*, 479 U.S. 523 [107 S.Ct. 828, 93 L.Ed.2d 920] (1987)—a case not cited to us by either of the parties. In that case, the accused said that "he would not give the police any written statements but he had no problem talking about the incident." *Id.* at 525 [107 S.Ct. at 830]. Later the accused reiterated that "he was willing to talk about [the incident] verbally but he did not want to put anything in writing until his attorney came." *Id.* at 526 [107 S.Ct. at 830]. A majority of the Supreme Court held that the officers did not violate *Edwards* by continuing to talk with the accused under these circumstances. The Supreme Court emphasized that the accused's request for counsel was "accompanied by affirmative announcements of his willingness to speak with the authorities." *Id.* at 529 [107 S.Ct. at 832].

119 Idaho at 931, 811 P.2d at 1111. We agree with the Court of Appeals analysis, and accordingly the district court's denial of Gascon's motion to suppress evidence is affirmed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

A troublesome concern is that the Court would not be so quick to uphold the governmental conduct if, for instance, after the police netted Gascon at the roadblock they

did not find any evidence whatever which tended to identify him as the bank robber, but did find cocaine or other drugs which evidenced criminal activity pertaining to the illegal drug industry. The authorities played out someone's pure hunch that the bank robber would not lay low, but would flee the vicinity. That hunch panned out. Subtract such good luck from the equation, and this case parallels the earlier *State v. Henderson*[1] roadblock case, and should result in the same conclusion, if there is to be any symmetry in the law, as will be succinctly explained.

## I. THE ROADBLOCK DID NOT COMPLY WITH THE REQUIREMENTS OF I.C. § 19–621 AND § 19–622.

The legislature has provided that a roadblock may be established only under certain circumstances:

**19–621. Authority to establish road blocks.**—The duly elected or appointed sheriffs, state policemen or policemen of cities of the first or second class of the state of Idaho are hereby *authorized to establish*, in their respective or adjacent jurisdictions, *temporary road blocks* upon the highways of this state or city streets *for the purpose of apprehending persons reasonably believed by such officers to be wanted for violation of the laws of this state*, of any other state, or of the United States, *and using such highways or streets.*

**19–622. Minimum requirements.**—For the purpose of warning and protecting the traveling public, *the minimum requirements to be met by such officers establishing temporary road blocks, if time and circumstances allow, are:*

1. The temporary road block must be established at a point on the highway or street clearly visible at a distance of not less than 100 yards in either direction.

2. At the point of the temporary road block, a sign shall be placed on the center line of the highway or street displaying the word "stop" in letters of sufficient size and luminosity to be readable at a distance of not less than 50 yards, in both directions, either in daytime or darkness.

3. At the same point of the temporary road block, at least one (1) blue light, on and burning, must be placed at the side of the highway or street which shall be a flashing or intermittent beam of light, clearly visible to the oncoming traffic, at a distance of not less than 100 yards.

4. At a distance of not less than 200 yards from the point of the temporary road block, warning signs must be placed at the side of the highway or street, containing any wording of sufficient size and luminosity, to warn the oncoming traffic that a "police stop" lies ahead. A burning beam light, flare or reflector must be placed near such signs for the purpose of attracting the attention of the traffic to the sign.

(Emphasis supplied.) Before a constitutional issue may be reached on the establishment of a roadblock in Idaho, this Court is constrained to first inquire as to whether the statutory requirements for the roadblock were satisfied. Whether a roadblock was *constitutionally* permissible is of interest only where the statutory requirements have been satisfied. *See*, for example, *Michigan State Police v. Sitz*, ⸺ U.S. ⸺, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (guidelines established for the operation of sobriety roadblocks were followed by the Michigan State Police).[2]

---

1. 114 Idaho 293, 756 P.2d 1057 (1988).

2. This Court's continued reliance upon *Henderson,* even after the *Sitz* opinion was released by the United States Supreme Court, is proper. *Sitz* stands for the proposition that stopping all vehicles at roadblocks set up to deter drunk driving does not contravene the Fourth Amendment. Idaho now has the power, under the Fourth Amendment, to set up such roadblocks if all cars are stopped and some guidelines are promulgated for the police to follow. However, this Court's holding in *Henderson* is based explicitly upon art. 1, § 17 of the Idaho Constitution, which can afford the citizens of Idaho greater constitutional protection: "[W]e base our decision today solely on art. 1, § 17 of the Idaho Constitution. The Idaho Constitution can, where appropriate, grant more protection than its federal counterpart." *Henderson,* 114 Idaho at 299, 756 P.2d at 1063 (citations omitted).

On the circumstances presented, the statutory requirements were not met by the roadblock at the Perrine Bridge. First, the statute unambiguously states that roadblocks may only be established "for the purpose of apprehending persons reasonably believed ... to be wanted for violation of the laws ... and using such highways or streets." I.C. § 19–621. The bank robber was known to have left the bank on foot, after which he was not seen again. The Court of Appeals observed the obvious; there was aught but a possibility that the robber might attempt to flee and in so doing would use the highways and streets. Such was not sufficient information to justify throwing up the roadblock and stopping vehicular traffic exiting Twin Falls via the bridge.

Moreover, that roadblock did not conform to the I.C. § 19–622's specifications. Although the State may argue that "time and circumstances" did not allow the officers opportunity to conform to the law, the record provides no information to determine whether the State did or did not have the time to conform. Only one inference may reasonably be drawn from the record: the officers *did have* sufficient time to set up the roadblock in accordance with the statute, which follows from the actual undisputed fact that some time passed after an invisible roadblock was established before the visible roadblock was put in place.

The notion that this roadblock operation was a lawful exercise of the State's police power because it was a "reasonable tactical response" does not withstand scrutiny. Such language does not appear in the applicable statutes, and for a court to read such language into the statutes is questionable, to say the least. The Court of Appeals in its opinion went along with the tactical response hypothesis:

An objective standard for measuring the reasonableness of such an intrusion is whether the officers have probable cause to believe a serious felony is being or has recently been committed, *State v. Silvernail, supra* [25 Wash.App. 185, 605 P.2d 1279 (1980), and the officers reasonably believe the perpetrator is using the highways or streets, I.C. § 19–621.

As noted, the officers here had probable cause to believe a serious felony had been committed. The officers knew the crime was a bank robbery where an alleged bomb had been displayed. The officers had a reliable, albeit general, description of the, robbery suspect. Although the officers had no information indicating the suspect had access to a vehicle, their decision to establish a temporary roadblock at the Perrine Bridge was a *reasonable tactical response.*

119 Idaho at 927, 811 P.2d at 1107 (emphasis added). All that is necessary, then, if that is to be the law of Idaho is that at a later time, after the fact, an officer will step forward saying, "I reasonably believed...." *No officer stepped forward to so say.*

A majority of this Court's treatment of the roadblock statutes compares favorably with the Court of Appeals' treatment of the same issue, in that both treatments are unsatisfactory. First, the majority replaces a "reasonable tactical response" with "logistic realities." The short passage is worth repeating: "To suggest that it was unreasonable for the police to suspect that the robber would attempt to flee the community in an automobile, using the Interstate highway, ignores the logistic realities which the local trial judge was in the best position to determine. We therefore find no violation of I.C. § 19–621." 119 Idaho at 934, 812 P.2d at 241. There is no doubt but that the majority believes logistic realities are the base from which to build reasonable tactical responses. What is most astounding about this passage is that, unless my memory fails me, there is simply nothing in the statute which authorizes or suggests that the police obtain the beforehand advice of a local judge as to the propriety of establishing a roadblock. If the reference is to an after-the-fact, *i.e.* after the roadblock has been established, on the basis of one, or maybe more, police officers' perceptions of the law, then, too, I am equally astounded that an after-the-fact appraisal is entitled to an unquestioning deference, because of a local judge's stamp of approval. Difficult to imagine is how

the police and the trial judge must have surmised that the suspect was going to leave Twin Falls at all, instead of laying low for awhile. But again, that must also be a part of logistic reality.

Second, today's majority, in response to Gascon's argument that the roadblock of the Perrine Bridge did not comply with the applicable statutes, states that "if the police have a reasonable belief that a crime has been committed—as was the case here—and they have a basic description of the suspect—as was also the case here —§ 19–621 allows them to set up a roadblock on a likely escape route to apprehend the suspect." 119 Idaho at 933, 812 P.2d at 240. The statutory list of the requirements for setting up a roadblock omits the need for the police to (at least) reasonably believe that the suspect they are searching for is using the highways and streets.[3]

As explained in *State v. Henderson*, 114 Idaho 293, 756 P.2d 1057 (1988), a roadblock is a statutorily regulated tactic of the police, which may not be used just because it may catch somebody who is guilty of something. The roadblock netted Henderson only because he was found to be driving while under the influence, which unfortunately happens every day in Idaho with or without the use of roadblocks. The legislature has made the determination that a roadblock is intrusive enough to require specific information about a fleeing suspect as a condition precedent to erecting a roadblock. While there are many of us who do not experience any trauma on being delayed by a roadblock, we are not the legislature.

In this case, the roadblock was not established in accordance with the legislatively established minimum requirements, and such should be the end of all inquiry.

## II. THE STOP OF GASCON'S CAR DOES NOT PASS CONSTITUTIONAL MUSTER.

Although the decision to establish the roadblock does not pass statutory muster, and should be "enough said," there remains the further problem of stopping Gascon's vehicle, and additional proceedings which ensued after he was neutralized. This Court's opinion in *Henderson* stated that:

> When a vehicle is stopped by a police officer and its occupants are detained, a seizure within the fourth amendment of the United States Constitution and art. 1, § 17 of the Idaho Constitution has occurred, even if the purpose of the stop is limited and the resulting detention is quite brief. [Citations omitted.] Thus, at a minimum, precedent suggests that police have individualized suspicion of criminal wrongdoing prior to stopping the driver of an automobile. [Citation omitted.] Significantly, all exceptions to the warrant requirement, including a limited *Terry* stop, require individualized suspicion.

*Henderson*, 114 Idaho at 295, 756 P.2d at 1059.

**3.** The words "at least" are placed in parentheses to suggest that another justified reading of the language of I.C. § 19–621 would require the police not to just reasonably believe, but to know with reasonable certainty that the suspect is using the highways and streets before they would be justified in setting up a roadblock. This interpretation of I.C. § 19–621 results from simply reading the last clause of that statute as a separate and distinct requirement, which stands apart and alone from the other requirement in the statute. Added in brackets are the numbers one and two, which precede the two requirements for setting up a roadblock contained in I.C. § 19–621: "The duly elected or appointed [officials] ... are hereby authorized to establish ... temporary road blocks ... for the purpose of apprehending persons [1] reasonably believed by such officers to be wanted for viola- tion of the laws of this state, of any other state, or of the United States, and [2] using such highways or streets." While it is conceivable that the legislature intended both requirements of this statute to be supported by just a reasonable belief, it is also plausible that the legislature intended what it actually wrote into the statute—roadblocks must be supported by [1] a reasonable belief that a certain suspect has committed a crime, and [2] a reasonable certainty or certain knowledge that the suspect is using the highways and streets.

No rule of statutory construction requires this Court to dispense with requirement [2] altogether, as the majority does today; and no rule of construction mandates that we apply the phrase "reasonable belief" to all information required of the police to support their actions.

This statement is mirrored in the law pronounced by the Idaho Court of Appeals in *State v. Cook*, 106 Idaho 209, 677 P.2d 522 (Ct.App.1984):

> Cook concedes, and it is clear from the facts of this case, that the officers had the right to stop his car without a warrant and question him and his companion concerning their possible involvement in the robbery. Such an investigative stop is an 'intermediate response' that allows an officer, who lacks probable cause to make an arrest, to actively investigate possible criminal behavior. As the Supreme Court stated in *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972):
>
>> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be ... reasonable [under the fourth amendment] in light of the facts known to the officers at the time.
>
> Moreover, if an officer who makes an investigatory stop 'has reason to believe that the suspect is armed and presently dangerous, the officer is entitled to "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."' *State v. Post*, 98 Idaho 834, 838, 573 P.2d 153, 157 (1978) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence....' *Adams v. Williams*, 407 U.S. at 146, 92 S.Ct. at 1923.

*Cook*, 106 Idaho at 214–15, 677 P.2d at 527–28.

The Court of Appeals decision in this case readily agreed that an articulable and reasonable suspicion is required for an investigatory stop. *See* 119 Idaho at 928, 811 P.2d at 1108. However, that requirement was deemed fulfilled solely on "Gascon's conduct of leaning into the passenger's side of his vehicle while approaching a visible roadblock [which] reasonably could have raised [the state police officer's] suspicions." 119 Idaho at 929, 811 P.2d at 1109. Such a slim reed as that is not persuasive. All that the officers had was a general description of the bank robber, to wit, a man; plus he was approximately five feet four inches in height, and his hair was blond. A nondescript description of his clothing consisted of a baseball cap and a jacket. This simply was not enough. To believe that it was sufficient would defy all reason. Fortunately for law enforcement personnel, where reason was of no help, a hunch was.

In this case, Gascon was stopped and ordered out of his vehicle only because he was observed by the state police officer to be leaning over toward his right. In no way can it seriously be said that the officer who instructed the officers at the roadblock to stop Gascon's car considered that he did so because the driver matched the description of the bank robber. The "leaning over," one fact having nothing to do with the description, did not supply the articulable and reasonable suspicion required for an investigatory stop. Therefore, the stop of Gascon's vehicle, unsupported by a warrant, probable cause, or even a simple reasonable and articulable suspicion, was unconstitutional.

A majority in this Court presents the issue, but deems it of no moment that the reason Gascon was stopped had nothing whatsoever to do with the information the police had of the bank robber and the bank robbery:

> [Gascon] argues that the stop would only have been justified if the police were able to match their description of the suspect with the driver of the vehicle. We find this argument unpersuasive. The police knew a bank had been robbed; they had a general description of the suspect; and they were situated at a place likely for a suspect to make an escape. Officer Johnson ... observed Gascon lean over to the passenger side of the car at least two times and disappear from sight at least once. In light of the circumstances, the moves of the driver were aptly characterized as suspicious and

gave rise to a reasonable and articulable suspicion that Gascon *could have* been involved in the robbery and that he may be armed and dangerous.

119 Idaho at 934, 812 P.2d at 241 (emphasis added). Although no longer a lawyer who at one time taught a class in criminal law and procedure, I can remember what was required for a passing grade. The analysis which I read today would not merit a high mark.

The issue is not whether Gascon's actions were suspicious, because many actions can be, after the fact, labelled as suspicious in order to justify police action. The issue is whether the police reasonably believed that the person who was stopped and turned out to be Gascon fit the description of the bank robber. Or, put another way, this Court should ask itself whether the police had a reasonable and articulable suspicion that the person who they stopped and seized was the bank robber,[4] given the information the police had at hand about the robbery and the robber before Gascon was stopped. This reasonable and articulable suspicion must be sufficient to support the investigatory stop of Gascon's vehicle; otherwise the stop is constitutionally impermissible. The analysis of that issue is obvious—the police did not stop Gascon because they reasonably believed he fit the description of the bank robber. Instead, he was stopped, we were told, because he leaned over while driving, which is an innocuous activity.[5]

---

**4.** The analysis is not, as the majority suggests, to ask whether the police had a reasonable and articulable suspicion that Gascon *could have* been the bank robber. Reasonable suspicions on what could or might be are numerous, and are also of absolutely no value from the standpoint of a court of law.

**5.** In an unrelated matter, the Court of Appeals recently reversed the conviction of a man who had obviously been driving drunk, on the ground that the stop leading to the man's arrest was not supported by a reasonable belief or articulable suspicion:

The evidence adduced by the officer [slow response to traffic signal; driving close to parked cars; driving in this manner at 2:40 a.m. Sunday morning] could just as easily be explained as conduct falling within the broad

## III. THE SEARCH OF GASCON'S CAR WAS UNLAWFUL.

Gascon was ordered out of his car and taken to the rear quarter panel of the car, far away from the passenger compartment. He was not frisked for weapons and he was not asked any questions. Instead, the officers immediately searched the passenger compartment of the car. The majority supports the actions of the officers by noting that a protective search of a car may be performed in certain circumstances in order to secure the officers from harm. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

However, in these circumstances, with the defendant Gascon away from the vehicle, a number of officers in the immediate vicinity, and a state patrol car immediately behind Gascon's vehicle, it was not constitutionally permissible for the officers to conduct the search. As the *Michigan v. Long* opinion requires, a reasonably prudent man or woman under these circumstances would not be warranted in the belief that his or her safety or that of others in the immediate area was in danger. If safety was a real concern, the officers should have and would have frisked the defendant. Anything less protective would have been irregular procedure meriting at the least a reprimand. Instead, Gascon was removed from the car and the car was searched. It was a search for evidence of

---

range of what can be described as normal driving behavior.

. . . .

We conclude that the officer's observations regarding Emory's driving pattern failed to give rise to reasonable and articulable suspicion that Emory was driving his vehicle while under the influence of alcohol. Although it later became apparent that Emory was indeed intoxicated, the suspicion for the stop must be based upon objective information available to the officer when he decided to make the stop, and cannot be bolstered by evidence gathered following the stop.

*State v. Emory*, 119 Idaho 661, 661, 809 P.2d 522, 525 (Idaho Ct.App., 1991). *Emory* is an example of the price we all pay for personal liberty in this country, a price at least one member of this Court is willing to pay.

crime. The officers, probably without thinking, reacted to a "tactical response." It would have been far better, and legal, for one of the officers to go before a magistrate and obtain a search warrant. And even far better, Gascon's car could have been stopped, Gascon could have been allowed to remain in his car while he was asked a few questions, and he could have been compared to the physical description of the bank robber, such as it was when furnished to the police.

Unlike the stop of the car and frisk of the driver in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), Gascon's car was not lawfully detained, and the officers were without reason to believe Gascon posed a threat to their safety. In *Mimms*, the Court's holding was a limited one, proclaiming only that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." 434 U.S. at 111 n. 6, 98 S.Ct. at 333. Although one sympathizes with law enforcement people when a remarkably good hunch which paid off goes for nothing because of lack of official perspicuity, *the law is such* that this Court this day should overturn the district court's order denying Gascon's motion to suppress the evidence obtained at the roadblock, and likewise the statements made by Gascon after his arrest should be suppressed as fruits of the unlawful stop and search of his car. *See State v. Cook, supra* (discussion of the independent sources for evidence that would not bar the evidence as fruit of the poisonous tree).[6] As someone once said, "Far better that one person es-

capes than that the law be turned on its head so that he does not."

## DISSENT ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting on denial of Petition for Rehearing.

The Court today by a vote of four to one eschews an opportunity to engage in an intellectual and educational exercise, the purpose of which should be to rebuff defense counsel's learned treatise dissecting the Court's disposition of the constitutional validity of the roadblock and the ensuing seizure of and searches involving the defendant. An honest and open-minded reading of the petition and supporting brief is convincing that defense counsel's thrust is not at all aimed at freeing Troy A. Gascon (although that would likely be a by-product *if* this Court were to at least engage in a conference discussion and consideration of the well-supported points of law which have been presented), but rather is aimed at enlightening the Court wherein it has erred in application of controlling federal case law precedent, and this Court's recent *Henderson* decision.

The argument part of defense counsel's supporting brief presents compelling reasons to which the Court, simply put, is unable to make a respectable reply. Instead it denies the petition for rehearing, which in recent months has come to be matter of rote, and smacks of indifference to the quality work product of counsel. The following excerpt from the brief is exemplary, and moreover, prepared without any thought of recompense.

---

**6.** A discussion of Gascon's *Miranda* rights is put aside, as the Court has already decided to place its imprimatur on *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), which was relied upon by the Court of Appeals. In *Barrett*, the United States Supreme Court overturned the Connecticut Supreme Court's determination that Barrett's request for counsel was not honored, on the ground that Barrett's invocation of his right to counsel was limited by its terms to the preparation of written statements to the police, and did not prohibit all further discussion with the police. Such an

unprincipled restriction of *Miranda* after these many years is astonishing, and has to be lived with, but for only a while, in light of the Supreme Court's recent reinvigoration of *Miranda* and its progeny. *See Minnick v. Mississippi*, — U.S. —, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (when counsel is requested, interrogation must cease, and officers may not reinitiate interrogation without counsel present). In this case, Gascon's request for a lawyer was not honored before an FBI agent reinitiated interrogation, which is expressly forbidden by *Minnick*.

## ARGUMENT

### I.

### HAS THE IDAHO SUPREME COURT ERRED IN THE FACTS RELIED UPON IN ITS DECISION IN THIS CASE?

The majority opinion asserts that the officers at the roadblock had a description of the robber. No unity as to the nature of that description was ever demonstrated by the prosecution. The description stated as fact by the majority decision, 91.8 I.S.C.R. 506 is the recollection of one officer (Lamont Johnston). None of the other officers substantially corroborate the physical description of the suspect. No witnesses to the actual robbery testified at the suppression hearing so no details of the offense were presented to the court. No dispatch deputies testified to the timing or content of any information broadcast concerning the robbery or the individual committing the robbery. Four officers testified at the suppression hearing. They were all involved at the roadblock south of the Perrine Bridge. No officer testified that he had information that any vehicle had been employed in the robbery. The officers gave varying descriptions of the suspect they sought. (Lamont Johnson Transcript, pp. 27 & 34); (Larry Webb Transcript, p. 56); John Putzier Transcript, p. 115); Ronald Cogswell Transcript, p. 141). No officer testified that appellant was stopped because he fit the description broadcast. Rather, the stop was effectuated because the appellant was seen by officer Johnston to lean over into the passenger front seat area two or three times as he approached the roadblock (Transcript, p. 30). Upon seeing these movements, officer Johnston drove to the roadblock and told foot officers to stop the vehicle. Johnston used his intercom to inform officers that appellant had placed something under the front seat.

Officer Putzier had closely observed appellant and the interior of the vehicle as it passed by him. Officer Putzier saw nothing suspicious in the vehicle (Transcript, p. 116). He didn't feel the driver matched the description of the suspect (Transcript, p. 121). He saw no furtive gestures as the vehicle approached him (Transcript, pp. 128–129). Deputy Putzier testified that no one at the roadblock knew what kind of weapon had been used in the robbery (Transcript, p. 137).

The majority's assertion that the police 'immediately set up an invisible roadblock' is totally unsupported by the record. No evidence of the timing of the robbery was presented. The Attorney General's office has been totally unable to point out such evidence in the record.

The assertion that Johnston saw Petitioner putting something under the seat as the car approached the roadblock (at 91.8 I.S.C.R. 506) is a conclusion based solely on observations of Petitioner leaning over to the passenger side of his vehicle. Johnston guessed that Petitioner was putting something under the seat and communicated it to other officers. The majority accepts this guess as fact.

The assertion that the roadblock covered the 'quickest route to the interstate highway' at 91.8 I.S.C.R. 506 is also unsupported by the record. No proof of the location of the robbed Twin Falls Bank and Trust was ever presented. No spatial relationship between the robbery and the roadblock was ever proven.

### II.

### DID THE MAJORITY OPINION MISAPPLY THE BURDEN OF PROOF IN THIS CASE?

The majority opinion repeatedly upholds police action because the justices cannot find the behavior unreasonable. The burden of proof in warrantless searches and seizures is upon the State to prove warrantless searches and seizures reasonable against a strong contrary presumption of illegality. *Colorado v. Barrister*, 449 U.S. 1, 1 of 1, [101] S.Ct. 42[, 66 L.Ed.2d 1] (1980), *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586[, 61 L.Ed.2d 235] (1979).

In order to validate the police seizure and search in this case, the state must prove them reasonable based on stated facts measured against an 'objective standard.' *Delaware v. Prouse,* [440 U.S. 648,] 99 S.Ct. 1391[, 59 L.Ed.2d 660] (1979). No such weighing of the State's evidence is measured against any objective standard in the majority's ruling on the roadblock, the stopping of Petitioner's vehicle or search of his vehicle. The Court simply indicates it cannot find them unreasonable.

The majority opinion shifts the burden to Petitioner and deprives him of a full and fair opportunity to adjudicate his Fourth Amendment claims by misapplying the facts to the law and shifting the burden to Petitioner without notice.

### III.

HAS THE IDAHO SUPREME COURT FAILED TO RECOGNIZE AND APPLY CORRECT UNITED STATES CONSTITUTIONAL STANDARDS GOVERNING ROADBLOCKS AND SEIZURES OF INDIVIDUALS.

The majority opinion declines to address and apply ruling Federal Standards governing the establishing of roadblocks. The decision upholds the roadblock totally based upon Idaho Code Section 19–621 and declines to discuss Federal case law governing temporary vehicle seizures generally. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391[, 59 L.Ed.2d 660] (1979); *U.S. v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074[, 49 L.Ed.2d 1116 (1976)]; *U.S. v. Cortez,* 449 U.S. 411[, 101 S.Ct. 690, 66 L.Ed.2d 621] (1981), (temporary seizures of individuals generally combined with protective searches); *Sibron v. New York,* [392 U.S. 40] 88 S.Ct. 1889[, 20 L.Ed.2d 917] (1968); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868[, 20 L.Ed.2d 889] (1968), or what behavior by individuals seized temporarily may justify longer seizure; *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921[, 32 L.Ed.2d 612] (1972).

If the legislature did not intend to establish statutory standards of reasonableness in passing Idaho Code Sections 19–621 and 19–622 as found by the Court of Appeals and ratified by the majority opinion, what standard of reasonableness if the majority applying to Petitioner's claim under the Fourth Amendment of the United States Constitution and Article 1, section 17 of the Idaho Constitution. No Federal standard of reasonableness is stated in the majority's discussion of the legitimacy of the roadblock or the attempted stop of Petitioner's vehicle. Such a failure to recognize and apply constitutional standards does not provide opportunity for a full and fair consideration of Federal Fourth Amendment claims.

The majority opinion offers no legal authority (Idaho or Federal case authority or statutes) to justify the stop of Petitioner's vehicle. Failure to refer to and implement correct and controlling Federal constitutional case law deprives a Defendant of a fair and full opportunity to litigate Federal Fourth Amendment claims. *Gamble v. State of Oklahoma,* 583 F.2d 1161 (1978).

The majority opinion misstates the case by asserting that the state has proved that the police had a general description of the suspect and in a place likely for the suspect to make an escape. Nor is there anything in the physical leaning twice across the front seats of his vehicle to indicate that he has recently robbed a bank or is armed and dangerous. These factual determinations are not fairly supported by the record as a whole. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.[2d] 770 (1963).

The majority's assertion that Petitioner's activities in the front of his vehicle gave rise to a reasonable suspicion that he was the bank robber is simply an "ipse dixit" assertion. See, *Logical Fallacies and the Supreme Court,* by Andrew McClure, Vol. 59, Colorado Law Review, 741 at 802. Chief Justice Bakes simply asserts that it is true but offers no reasonable factual inferences or logical connection between circumstances and conclusions. It is evidently true because Justice Bakes says so.

## IV.

### DID THE SUPREME COURT MISAPPLY IDAHO CODE SECTIONS 19–621 AND 19–622 TO THE FACTS OF THIS CASE.

The majority's discussion of Idaho Code Section 19–621 drops one of the statute's predicates.

Therefore, if the police have a reasonable belief that a crime has been committed—as was the case here—and they have a basic description of the suspect—as was also the case here— Section 19–621 allows them to set up a roadblock as a likely escape route to apprehend the suspect.

No mention is made of the statute's requirement that the suspect be using such highways and streets. Not only does the Supreme Court ignore that requirement in its holding of law, but at no point does the majority supply a factual justification for a finding that the robber in this case was using any streets of Twin Falls. The State bears the burden of justifying any warrantless search and seizure procedure whether statutory or otherwise.

The majority decision places the burden of showing non-compliance with Idaho Code Section 19–621 on the defense. By holding that 'the police were not unreasonable in suspecting ...' the majority shifts the burden to the defense to show police procedures unreasonable. At no point does the majority make the constitutionally required finding that the state has proved that the police actions were reasonable. The cited Court of Appeals language 'common sense suggests such a possibility' makes manifest this ignoring of the state's responsibility to establish probabilities based upon proof of specific and articulable facts in the possession of the police. Even the appellate courts of this state are unable to point to specific and articulable facts which would justify a reasonable man in believing the robber to be on the streets of Twin Falls. As argued above, the Prosecutor did not ever attempt to prove the content of the physical description communicated to the police. Nor did the

officers testifying present any consistent description. No unified description of the suspect was ever proved. Nor was there a portrayal of the location of the robbery. The majority decision finds a 'likely escape route' without awareness of the location of the robbery. The majority holds that logistic realities support the police action when there is absolutely no portrayal of logistic realities by the Prosecutor in the record.

The shifting of the burden to the Defense is further accomplished by the finding that the Defense somehow waived asserting non-compliance with Section 19–622. The Prosecution never claimed that the roadblock was justified by Idaho Code Section 19–621 in the trial court. The prosecution argued *Terry v. Ohio* (Transcript, p. 198); *Michigan v. Long*, (Transcript, p. 201); *Carroll*, and *U.S. v. Ross*, (Transcript, p. 202); *Pennsylavnia v. Mimms; Adams v. Williams; Chimel v. California; New York v. Belton*, (Transcript, p. 205); *New York v. Class*, (Transcript, p. 206); *U.S. v. Cortez*, (Transcript, p. 208).

The Court of Appeals and majority opinion seemingly find Defense waiver of objection to a potential justification for a roadblock that was never asserted by the prosecutor in the trial court. The Prosecutor is allowed to fail to prove Compliance with Idaho Code Section 19–622 by simply laying low and not asserting that Idaho Code Section 19–621 justified the roadblock. This procedure denies Petitioner a full and fair opportunity to litigate these issues in the trial court. *Stone v. Powell*, 428 U.S. 465, 965 [96] S.Ct. 3037[, 49 L.Ed.2d 1067] (1976).

The effect of the majority opinion is to make establishment of roadblocks totally discretionary with the police of this state. Any crime justifies roadblocks because no use of a vehicle by suspects need be shown. Any location may be approved because the police are to determine any 'tactical advantages' which need only amount to a suspicion founded on 'logistical realities.' This mis-application of Idaho Code Section 19–621 is made even more destructive of previous standards controlling warrantless searches and sei-

zures by the shifting of the burden of proof to the Defendant to show unreasonableness.

## V.

### DID THE SUPREME COURT MISAPPLY MICHIGAN v. LONG and PENNSYLVANIA v. MIMMS, TO THE FACTS OF THIS CASE.

The majority opinion also misapplies *Michigan v. Long*, 463 U.S. 1032, 1035, [103] S.Ct. 3469[, 77 L.Ed.2d 1201] (1983) to the facts of this case. *Long* involved only two officers who had observed a serious traffic accident at night, along an isolated rural road. The suspect was non-responsive to questions and simply began to return to the open door of his vehicle. The suspect was felt to be under the influence of something. Officers first plain viewed a large hunting knife through the open door of the vehicle and then shined a flashlight inside the vehicle. Officers investigated one suspicious object in plain view which turned out to be marijuana and then noticed another pouch containing marijuana on the front seat. The suspect was placed under arrest for possession of marijuana and further search of the vehicle yielded more marijuana.

*Long* requires specific and articulable facts which taken together with rational inferences therefrom reasonably warrant an officer in believing the suspect is dangerous and may gain immediate control of a weapon. *Michigan v. Long, supra,* [103 S.Ct.] at 3481. The majority decision articulates no specific facts or reasonable inferences therefrom to justify a weapons search. There was no proof that the Petitioner matched any general description received by the officers. Only one officer claimed that he did. The majority decision is careful not to assert that the stop was based on Petitioner matching the description. With no evidence that Petitioner was the robber, in broad daylight, on a busy city street, surrounded by four heavily armed officers, the Petitioner compliantly walked to the rear quarter panel of his vehicle. It would be hard to imagine a factual situation further removed from what the offi-

cers were confronted with in *Michigan v. Long*. The factual determinations bringing this case under the purview of *Michigan v. Long* are not fairly supported by the record as a whole. *Townsend v. Sain, supra*. The Magistrate's finding that the four officers were reasonably in fear of their safety when petitioner emerged from his vehicle at gunpoint misapplies *Michigan v. Long*.

The majority opinion also misapplies *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330[, 54 L.Ed.2d 331] (1977). *Mimms* authorizes asking an individual to step from his vehicle during a lawful stop. It also authorizes pat down of the individual in response to seeing a bulge in the suspect's clothing consistent with a pistol. *Mimms* does not authorize exploratory searches of the interior of an automobile. Officers here had no reason to believe there was a bomb in the Petitioner's vehicle. No court considering this case has advanced rationale for such a reasonable belief. As argued above, the police had no reason to believe Petitioner was the robber prior to the search of his vehicle. The 'ipse dixit' assertion referred to above is used as foundation for a reasonable belief that the Petitioner may have had a bomb in his car. Again the record in no way supports the factual conclusions. *Townsend v. Sain, supra*. *Mimms* is here misapplied to uphold a 'dive in' search based on nothing more than curiosity on the part of police officers.

## CONCLUSION

The decision handed down by the majority April 4, 1991, substantially modifies preexisting Idaho law governing police roadblocks, investigative stops and protective searches associated with investigative stops. The decision makes this impact without careful discussion of controlling Federal precedent. Based upon the authority and arguments presented in this Brief and previous Appellate Briefs filed in this case, Petitioner requests a Rehearing.

Having noted that not one of the four justices comprising the Court's majority responded to allay the concerns raised in my

dissenting opinion, it comes as no surprise that the Court is not much concerned that it very well may have discombobulated the law in the process of making certain that Troy Gascon pays for his unsuccessful misdeed. In the eyes of some persons that may be seen as commendable. But, in a larger sense, where the stability of the law is concerned, it is regrettable, and I said as much in the closing sentence in my earlier opinion which issued along with the Court's opinion in April of 1991.